IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELL THOMAS,<br><br>    Petitioner,<br><br>    v.<br><br>V. MOSER,<br><br>    Respondent. | Case No. 3:19-cv-166<br><br>Magistrate Judge Patricia L. Dodge |

**MEMORANDUM**[1]

For the reasons that follow, the Court will deny the petition for a writ of habeas corpus (ECF No. 5) filed by federal prisoner Travell Thomas ("Petitioner") under 28 U.S.C. § 2241.

**I.    Introduction**

Petitioner is a federal prisoner who is housed at FCI Loretto, which is located within the territorial boundaries of the Western District of Pennsylvania. He contends that his due process rights were violated during a disciplinary proceeding in which a Disciplinary Hearing Officer ("DHO") found that he committed the offense of Possession of a Hazardous Tool (a cell phone) and lost good conduct time ("GCT") as a sanction.

Petitioner has been housed at FCI Loretto since December 21, 2018. He was previously housed at USP Lewisburg[2] and some of the events in question in this case occurred there. Petitioner properly filed his petition with this Court because a federal prisoner must file his § 2241 habeas

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.
[2] USP Lewisburg is located within the U.S. District Court for the Middle District of Pennsylvania.

petition with his custodial court, which is the federal district court in the district in which the prisoner is incarcerated. *Bruce v. Warden Lewisburg* USP, 868 F.3d 170, 178 (3d Cir. 2017).

The Respondent, who in this action is the Warden of FCI Loretto, has filed the answer to the petition. (ECF No. 15). Petitioner did not file a reply. *See* Local Rule 2241(D)(2) (a petitioner may file a reply within 30 days of the date the respondent files the answer).

## II. Discussion

In order to obtain habeas relief, Petitioner has the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). Section 2241 confers habeas jurisdiction upon a federal prisoner's custodial court to hear challenges to BOP decisions that potentially affect the duration of his custody, such as the claims Petitioner makes in this case. *See*, *e.g.*, *Queen v. Miner*, 530 F.3d 253, 254 (3d Cir. 2008); *Barden v. Keohane*, 921 F.2d 476, 478-79 (3d Cir. 1990).

### A. The Due Process Rights of Federal Prisoners During Disciplinary Proceedings

The Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974) is its seminal decision concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of GCT, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. *Wolff*, 418 U.S. at 556-57. The Supreme Court held that prisoners are entitled to procedures that are sufficient to ensure that the protected interest (*i.e.*, the GCT) "is not arbitrarily abrogated." *Id.* at 557. Specifically, the Supreme Court held in *Wolff* that an inmate subject to a prison disciplinary proceeding must be afforded the following due process safeguards: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges twenty-four hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence,

provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rationale behind the disciplinary action. *Id.* at 563-72.

The regulations governing the conduct of BOP disciplinary proceedings are set forth at 28 C.F.R. §§ 541.1-541.8. These regulations track the requirements set forth in *Wolff*, and in some respects exceed the required process set forth in that case. The BOP's regulations pertaining to inmate discipline are further explained through Program Statement ("PS") 5270.09, which is entitled Inmate Discipline Program.[3]

The BOP's regulations provide that a staff member shall prepare an incident report when the staff member reasonably believes an inmate has committed a prohibited act.[4] 28 C.F.R. § 541.5(a). Another BOP staff member will investigate the report. *Id.*, § 541.5(b). Among other things, the investigator must inform the inmate of the charges against him and ask him if he would like to make a statement. *Id.*, § 541.5(b)(2).

An inmate shall ordinarily receive the incident report within 24 hours of staff becoming aware of the inmate's involvement in the incident. *Id.*, § 541.5(a). However, "[w]hen it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation." PS 5270.09 at 18. In these circumstances, "[s]taff may not question the inmate until

---

[3] Full copies of the BOP's various program statements are available on its website at https://www.bop.gov.
[4] Under the BOP's disciplinary policies, there are four categories of prohibited acts: Greatest, High, Moderate, and Low. 28 C.F.R. § 541.3(a). Greatest category prohibited acts are listed in the 100 series; High category prohibited acts are listed in the 200 series; Moderate category prohibited acts are listed in the 300 series; and Low category prohibited acts are listed in the 400 series. 28 C.F.R. § 541.3, Table 1. The severity level of a prohibited act determines the possible sanction. The offense Petitioner was charged with committing, Possession of a Hazardous Tool, is in the 100 series.

3

the FBI or other investigative agency releases the incident report for administrative processing. The incident report should then be delivered to the inmate by the end of the next business day. The time frame for processing the [i]ncident report is suspended until it is released for processing." *Id.*

A Unit Discipline Committee ("UDC") will review the incident report once the staff investigation is complete. An inmate is entitled to appear before the UDC during its review of the incident report, to make a statement, and to present documentary evidence. *Id.*, § 541.7(d)-(e). If the UDC finds that the inmate has committed a Moderate or Low severity offense (that is, an act in the 300 or 400 series) the UDC may impose minor sanctions. *Id.*, § 541.7(f). However, where, as was the case here, the inmate has been accused of committing a Greatest or High severity offense, the UDC must refer the charge to a DHO for a hearing. *Id.*, § 541.7(g).

An inmate's rights during a DHO hearing are set forth at 28 C.F.R. § 541.8, which requires: (1) 24-hour advance written notice of a charge prior to the inmate's appearance before the DHO; (2) that an inmate shall be provided a staff representative at the DHO hearing, if so desired; (3) that an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; (4) that the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses (although he may submit questions for requested witnesses in writing to the DHO); and (5) that the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized. *Id.*, § 541.8(c)-(f).

Once the DHO has conducted the hearing, considered the evidence, and decided whether the inmate committed a disciplinary infraction, the DHO is required to prepare a record of the proceeding and provide it to the inmate. *Id.*, § 541.8(h). The report must be sufficient to document the advisement of the inmate's rights, the DHO's findings and decision, the evidence the DHO relied upon, and the reasons for the sanctions imposed. *Id.*

B.   **Relevant Background**

On August 3, 2018, Petitioner was housed at the USP Lewisburg satellite camp. That morning, Officer J. Carpenter conducted a random search of a camp housing unit, during which he searched the cubicle assigned to Petitioner and another inmate named Anthony Ramseur. Officer Carpenter provided the following description of the incident:

> While searching the cubical this officer found a pink colored iPhone inside a locked locker. The phone was placed inside a folded pile of clothing on the left side of the locker. The locker also contained mail and different items with [Petitioner's] name on them which verified the lock belonged to [Petitioner].

(ECF No. 15-5 at 8). Officer Carpenter charged Petitioner with violating offense code 108, Possession of a Hazardous Tool. (*Id.*) A "hazardous tool" is defined as a tool "most likely to be used in an escape or escape attempt…or those hazardous to institutional security or personal safety[,]" including, among other items, a "portable telephone, pager, or other electronic device[.]" 28 C.F.R. § 541.3, Table 1.

The BOP's investigation of the incident was suspended from August 3, 2018 until August 27, 2018 while the FBI considered the matter for prosecution. (ECF No. 15-5 at 9). The FBI notified the BOP on August 27, 2018 that it was declining to prosecute, and the investigating officer delivered the incident report to Petitioner that same day and advised him of his rights. (*Id.*) Petitioner informed the investigating officer "he has never purchased a combination lock from [the] commissary ever. He claim[ed] he never locks his locker and he never had a cellphone in his locker." (*Id.*) The investigating officer referred the incident report to the UDC for further disposition. (*Id.*)

Petitioner appeared before the UDC on September 4, 2018. (*Id.* at 8). The UDC advised him of his rights, and Petitioner stated that he understood them. He told the UDC that he was not guilty and that he had been "set up." (*Id.*) The UDC recorded that Petitioner also stated: "I have witnesses

5

but I will only disclose them to the DHO." (*Id.*) The UDC forwarded the matter to the DHO for further processing. (*Id.*)

Petitioner's first DHO hearing was held on or around September 20, 2018. Petitioner informed the DHO that he did not own a "lock." (*Id.* at 3). The DHO decided to "return[ ] the case to correctional services to discover evidence of lock ownership." (*Id.*)

Officer Carpenter issued a revised incident report on September 21, 2018 and in it he corrected what the DHO later accepted was a typographical error in the original report. (*Id.* at 3, 6). That is, in the original report Officer Carpenter had written that the locker that contained the iPhone "also contained mail and different items with [Petitioner's] name on them which verified *the lock* belonged to [Petitioner]." (*Id.* at 8) (emphasis added). In the revised incident report, Officer Carpenter wrote that the locker that contained the iPhone "also contained mail and different items with [Petitioner's] name on them which verified *the locker* belonged to [Petitioner]." (*Id.* at 6) (emphasis added).

Due to a subsequent administrative error, there was a delay in delivering the revised incident report to Petitioner. (*Id.* at 3, 7). After obtaining approval from the warden, the revised incident report was delivered to Petitioner on October 16, 2018. (*Id.* at 7). The DHO would later conclude that the delay did not impact Petitioner's ability to understand the allegations against him or defend himself against those allegations. (*Id.* at 3).

When the investigating officer delivered the revised incident report to Petitioner, he once again maintained that he was not guilty. (*Id.* at 7). The investigating officer referred the incident report to the UDC, and Petitioner appeared before it on October 22, 2018. (*Id.* at 6). The UDC once advised Petitioner of his rights at the DHO hearing. (*Id.* at 11). Importantly, Petitioner waived his right to call a witness or have a staff representative at the hearing. (*Id.* at 10).

Petitioner's DHO hearing was held on November 1, 2018. (*Id.* at 2-5). The DHO read

Petitioner his rights and Petitioner indicated he understood them. (*Id.* at 2). Petitioner verified that he waived his right to call witnesses and to have a staff representative. (*Id.* at 2-3). He told the DHO that he was not guilty. (*Id.* at 4). He presented commissary receipts which, he argued, proved that he did not buy a lock for the locker in question. (*Id.* at 4, 18-52). Additionally, Petitioner submitted a written statement in which he maintained that the iPhone was not his and challenged the delay in the disciplinary proceedings. (*Id.* at 14-17). He also complained that he had requested a witness during the processing of his *original incident report*. (*Id.* at 16). However, as set forth above, during the processing of the *revised incident report* Petitioner expressly waived his right to have witnesses and at his DHO hearing. (*Id.* at 3, 10).

The DHO issued his written decision on November 6, 2018 and it was delivered to Petitioner two days later. (*Id.* at 5). The DHO found that the evidence supported the charge that Petitioner committed the prohibited act of Possession of a Hazardous Tool and sanctioned him with the loss of 40 days of GCT. (*Id.*) The DHO explained that he did not credit Petitioner's "claim not to have a cellphone secreted in a locked locker within his assigned living space[.]" (*Id.* at 4). The DHO further explained:

> Conversely, Officer J. Carpenter was known to have nothing to gain by falsifying his account of discovering a pink iPhone…inside of a locked locker containing mail and personal items with [Petitioner's] name on them[.]…Given the locker contents (items with [Petitioner's] name on them), the DHO fully believed [Petitioner] had dominion, control and knowledge of the iPhone hidden in the folded clothing within the locked locker.

(*Id.*) In addressing Petitioner's defense that he had never purchased a lock from the commissary, the DHO noted that he found it "very plausible" that Petitioner either used a lock that had been purchased by another inmate or allowed another inmate to use his locker to hide the iPhone. Either way, the DHO explained, "the mere possession of the electronic device in [Petitioner's] locker violated [BOP] inmate discipline policy." (*Id.*)

7

### C. The BOP Complied With the Required Procedural Protections for Disciplinary Proceedings and the DHO's Decision Was Supported By the Requisite Amount of Evidence to Survive Federal Habeas Review

Petitioner has not satisfied his burden of demonstrating that his due process rights were violated during his disciplinary proceeding. The record demonstrates that he appeared before an impartial decision making body on November 1, 2018; received notice of the charge against him at least 24 hours in advance of the hearing by receiving copy of the revised incident report on October 16, 2018; was afforded the opportunity to have witnesses and a staff representative at his November 1, 2018 DHO hearing; was present throughout the UDC reviews and DHO hearings and participated in each; and, received a written copy of the DHO's findings and the sanctions imposed. Accordingly, Petitioner received all of the due process protections required by *Wolff*.

Petitioner contends the "*UDC* failed to call" his roommate, Anthony Ramseur, as a witness. (ECF No. 5 at 8) (emphasis added). This argument has no merit. The record demonstrates that the first time Petitioner appeared before the UDC on September 4, 2018 he refused to disclose the name of the witness he wanted to call. (ECF No. 15-5 at 8). And, when Petitioner appeared before the UDC on October 22, 2018 during the processing of the revised incident report, he expressly waived his right to present a witness at his DHO hearing. (*Id.* at 10). At his subsequent November 1, 2018 DHO hearing, Petitioner once again confirmed that he waived his right to call a witness. (*Id.* at 3).

Petitioner also contends that Officer Carpenter should not have been provided with the opportunity to revise the original incident report, and he complains about the delay in processing that report. He has not demonstrated, however, that either the revision of the incident report or the delay in processing it amounted to a violation of his constitutional rights, or that he was prejudiced by any alleged procedural violation. *See, e.g., Ancrum v. Holt*, 506 F. App'x 95, 97-98 (3d Cir.

8

2012) (citing *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (harmless error analysis applies to cases concerning prison disciplinary proceedings)). Indeed, Petitioner offers no argument to show how the revision of the incident report to correct a typographical error or the delay in processing that report impacted his ability to understand the allegations against him or defend himself.

Petitioner also challenges the DHO's determination that he committed the prohibited act of Possession of a Hazardous Tool. This challenge has no merit either. It is well settled that a DHO's determination is entitled to considerable deference by a reviewing court and it must be upheld as long as there is "some evidence" to support it. As the Supreme Court explained in *Superintendent v. Hill*:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.... Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

472 U.S. 445, 455-56 (1985) (internal quotation marks and citation omitted); *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("a prison disciplinary decision need only be supported by 'some evidence' in order to satisfy due process."); *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989) ("The due process requirements in this context are minimal"). There is no requirement that the evidence be direct, or "logically preclude[ ] any conclusion but the one reached by the disciplinary board;" just that there is enough evidence, however "meager," to support the underlying decision. *Id.* at 457.

Here, the DHO's decision was based upon the requisite amount of evidence necessary to survive review by a federal habeas court. The DHO did not credit the verbal and written statement

9

Petitioner provided to him. In addition, the iPhone was found in a locker located in a cubicle Petitioner shared with only one other inmate. That locker contained other items that belonged to Petitioner. For these reasons, there was "some evidence" to support the DHO's determination that the iPhone was either Petitioner's or that he permitted another inmate to store it in his locker. BOP policy provides that it is an inmate's responsibility to keep his areas free of contraband. PS 5270.09 at 39. Thus, Petitioner was responsible for any items found in his locker in his cubicle.

## III. Conclusion

For the reasons set forth above, Petitioner is not entitled to habeas relief under § 2241 and, therefore, the Court will deny his petition (ECF No. 5).[5] An appropriate Order follows.

By the Court:

Dated: April 14, 2020

PATRICIA L. DODGE
United States Magistrate Judge

---

[5] 28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the dismissal of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. *United States v. Cepero*, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by *Gonzalez v. Thaler*, 565 U.S. 134 (2012).

10